IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER J. GODFREY,<br><br>    Plaintiff,<br><br>vs.<br><br>TERRY BRANSTAD, Governor of the State of Iowa, Individually and in his Official Capacity; KIMBERLY REYNOLDS, Lieutenant Governor of the State of Iowa, Individually and in her Official Capacity; JEFFREY BOEYINK, Chief of Staff to the Governor of the State of Iowa, Individually and in his Official Capacity; BRENNA FINDLEY, Legal Counsel to the Governor of the State of Iowa, Individually and in her Official Capacity; TIMOTHY ALBRECHT, Communications Director to the Governor of the State of Iowa, Individually and in his Official Capacity; and TERESA WAHLERT, Director, Iowa Workforce Development, Individually and in her Official Capacity,<br><br>    Defendants. | No. 4:13-cv-00042 – JEG<br><br>**O R D E R** |

    This matter comes before the Court on a Motion to Dismiss or Stay by Defendants Terry Branstad, Kimberly Reynolds, Jeffrey Boeyink, Brenna Findley, Timothy Albrecht, and Teresa Wahlert (collectively, Defendants). Plaintiff Christopher J. Godfrey (Godfrey) resists. A hearing on the Motion was conducted on July 30, 2013. Attorney Roxanne Conlin was present on behalf of Godfrey; and attorneys George LaMarca, Andrew Doane, and Philip De Koster were present on behalf of Defendants. The Motion is fully submitted and ready for disposition.[1]

---

[1] Central to the Court's consideration of matters herein was a comparison of the claims being asserted and rights available in collateral state and federal lawsuits. Accordingly, the Court found it necessary to await the determinations of the Iowa Supreme Court in <u>Godfrey v. State</u>, No. 12-2120, 2014 WL 2553412 (Iowa June 6, 2014) before reaching conclusions.

## I. BACKGROUND

### A. Factual Background[2]

On January 3, 2006, Godfrey was appointed Interim Workers' Compensation Commissioner for the State of Iowa by Governor Tom Vilsack and was confirmed by the Iowa Senate on April 11, 2007. In 2009, Godfrey was appointed to a six-year term as Workers' Compensation Commissioner for the State of Iowa by Governor Chet Culver and was confirmed by the Iowa Senate on March 30, 2009. Godfrey's current six-year term will expire April 30, 2015.

The position of Iowa Workers' Compensation Director is statutory; and the duties, responsibilities, and salary are defined and governed by Iowa law. See Iowa Code §§ 86.1 et seq.; 2008 Iowa Acts 1191 § 14(1)(d). Effective July 1, 2008, the Iowa legislature set a salary range for the Workers' Compensation Director of $73,250 to $112,070. 2008 Iowa Acts 1191 § 14(1)(d). On July 25, 2008, Godfrey's annual salary was increased to $112,068.84.

On November 2, 2010, Terry Branstad (Branstad) was elected Governor of the State of Iowa, with Kimberly Reynolds (Reynolds) as Lieutenant Governor. In a letter dated December 3, 2010, Branstad demanded that Godfrey resign from his position as Workers' Compensation Director. Godfrey refused to resign and was subsequently summoned to a meeting on December 29, 2010, with Branstad, Reynolds, and Branstad's Chief of Staff, Jeffrey Boeyink (Boeyink), where Godfrey's resignation was again demanded. At the meeting, Godfrey described the improvements he had instituted in the office and agreed to support Branstad's goals.

On July 11, 2011, Godfrey met with Boeyink and Legal Counsel to the Governor, Brenna Findley (Findley), where his resignation was again demanded. Godfrey refused to resign, asserting his position to be non-partisan and quasi-judicial. Boeyink and Findley informed

---

[2] For purposes of this motion, the factual allegations in the Complaint are accepted as true and viewed in the light most favorable to the Plaintiff. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013).

Godfrey that his pay would be decreased to the bottom of the salary range if he refused to resign. Godfrey again refused to resign, and his salary was subsequently reduced to $73,250 – the statutory minimum. Godfrey has since continued to work as Workers' Compensation Commissioner at the lower salary with no reduction in duties.

In addition to a salary decrease, Godfrey alleges that Defendants have created other obstacles that have affected his performance as Workers' Compensation Director. Director of Iowa Workforce Development Teresa Wahlert (Wahlert) has refused to interact with Godfrey and withheld money set aside for the Workers' Compensation Commission's budget. Branstad limited the resources available to Godfrey by item-vetoing a chief deputy commissioner from the Workers' Compensation Commission's budget. Godfrey also has been excluded from meetings, retreats, and conferences relating to the performance of his duties when all other employees at the same level were included.

Godfrey further alleges that defamatory statements were made concerning his performance as Workers' Compensation Commissioner. On July 12, 2011, Communications Director to the Governor Timothy Albrecht (Albrecht) made a statement to news organizations that Godfrey's pay had been cut due to poor performance. Also on July 12, 2011, Boeyink made statements to news organizations regarding Godfrey's work performance, stating Branstad's office was displeased with both Godfrey's performance and the direction of the Workers' Compensation Commission office. On July 13, 2011, Albrecht made additional statements to news organizations about Godfrey's performance, stating Branstad had spoken with businesses concerned about Godfrey's performance. Branstad made statements to news organizations concerning Godfrey's performance on July 13, 2011, blaming Godfrey for the rising costs of workers' compensation and contradicting previous statements that he was pressured into the action by business and industry. At a press conference on July 18, 2011, Reynolds stated that Godfrey was not meeting his objectives as Workers' Compensation Commissioner despite a lack of complaints

prior to July 2011. Albrecht made additional statements to news organizations regarding Godfrey's performance on July 19, 2011. Godfrey claims all of the statements made by the above parties concerning his performance as Commissioner are false.

## B. Procedural Background

### 1. State Case

Godfrey filed suit in the Iowa District Court for Polk County on January 11, 2012, alleging claims for sexual orientation discrimination and retaliation under the Iowa Civil Rights Act. All Defendants in both their individual and official capacities, as well as the State of Iowa, were named as defendants in the state court case. On August 6, 2012, Godfrey amended his state court petition, adding claims for unjust enrichment (Count III); breach of implied covenant of good faith and fair dealing against the State of Iowa (Count IV); breach of contract (Count V); procedural and substantive due process violations under the Iowa Constitution (Counts VI and VII); equal protection violations under the Iowa Constitution (Counts VIII and IX); interference with contractual relations (Count X); interference with prospective business advantage (Count XI); defamation against Reynolds (Count XII), Albrecht (Count XIII), Branstad (Count XIV), and Boeyink (Count XV); and extortion against Findley and Boeyink (Count XVI).

Under Iowa Code § 669.5(2)(a),[3] the Iowa Attorney General certified that the individual defendants acted within their scope of employment during the times material to Godfrey's allegations. Consequently, the Iowa district court substituted the State of Iowa for the individual

---

[3] Iowa Code § 669.5(2)(a) provides,

Upon certification by the attorney general that a defendant in a suit was an employee of the state acting within the scope of the employee's office or employment at the time of the incident upon which the claim is based, the suit commenced upon the claim shall be deemed to be an action against the state under the provisions of this chapter, and if the state is not already a defendant, the state shall be substituted as the defendant in place of the employee.

4

defendants in Counts VI through XVI and dismissed Counts X through XV in their entirety. Godfrey filed an interlocutory appeal to the Iowa Supreme Court, which was granted on January 3, 2013, arguing the dismissal of the individual defendants was in error. On June 6, 2014, the Iowa Supreme Court reversed the Iowa district court's dismissal of the individual defendants and Counts X through XV and remanded the case back to the Iowa district court, reinstating the individual defendants in Counts VI through XVI and reviving Counts X through XV. Godfrey v. State, No. 12-2120, 2014 WL 2553412, at *18 (Iowa June 6, 2014).

### 2. Federal Case

On January 30, 2013, Godfrey filed suit in this Court, seeking relief under 42 U.S.C. § 1983 against Defendants in their individual and official capacities for violating his due process and equal protection rights under the Fourteenth Amendment of the United States Constitution. The jurisdictional basis in this Court is predicated on federal question, 28 U.S.C. § 1331. Defendants filed this Motion to Dismiss or Stay on March 26, 2013, which Godfrey resists.

## II. DISCUSSION

Initially following the order of relief sought in the pleadings, Defendants seek to dismiss the Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and they also seek to dismiss or stay the proceedings for lack of subject matter jurisdiction under Rule 12(b)(1). Defendants first assert the claims brought against them in their official capacity should be dismissed because public officials cannot be sued for monetary relief under § 1983; however, as conceded by the parties at oral argument, that issue is moot because Godfrey amended his Complaint to add a request for injunctive relief. Second, Defendants argue Counts I and II should be dismissed because Godfrey does not have a property interest in his salary. Third, Defendants request that this Court dismiss or, in the

5

alternative, stay this case on principles of abstention because the Complaint is parallel to the state court lawsuit and exceptional circumstances warrant abstention.

The Court must first address the issue of abstention because if the Court dismisses or stays the case on principles of abstention, Defendants' other contentions need not be addressed at this time. Generally, the pendency of an action in state court does not bar federal jurisdiction, and federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them, even when there is a pending state court action involving the same subject matter." Fru-Con Constr. Corp. v. Controlled Air, Inc., 574 F.3d 527, 534 (8th Cir. 2009) (quoting Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 926 (8th Cir. 2006)). However, under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1979), federal district courts may refrain from hearing a case when a parallel case is pending in state court and "exceptional circumstances" warrant abstention. Colorado River abstention is driven by "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Id. at 817-19.

### A. Parallel Proceedings

As a threshold matter, the Court must determine whether the state and federal proceedings are parallel. Fru-Con Constr., 574 F.3d at 534-35. Under the prevailing standard, state and federal proceedings are parallel when "substantially similar parties are litigating substantially similar issues in *both* state and federal court." Id. at 535. The Eighth Circuit further requires "a substantial likelihood that the state proceeding will fully dispose of the claims presented in federal court." Id. The Court may consider whether the state and federal actions require distinct sources of law, evidentiary showings, measures of damages, and treatment on appeal. Id. at 536. If there is any doubt to the parallel nature of the state and federal proceedings, the Court should

not refuse jurisdiction under Colorado River abstention. Cottrell v. Duke, 737 F.3d 1238, 1245 (8th Cir. 2013) (citing Fru-Con Constr., 574 F.3d at 535).

In the federal complaint, Godfrey asserts causes of action under 42 U.S.C. § 1983 against Defendants in their individual and official capacities claiming denial of procedural and substantive due process and equal protection violations under the Fourteenth Amendment of the United States Constitution. In the state court petition, Godfrey asserts, among other causes of action, denial of procedural and substantive due process and violations equal protection under the Iowa Constitution. In both the state and federal claims, Godfrey alleges Defendants forced him to resign and reduced his salary because of partisan political reasons and Godfrey's sexual orientation. The defendants in the state proceeding are the same as the defendants in the federal proceedings, and both actions seek relief against the defendants in both their individual and official capacities.

Both the state and federal suits request compensatory damages in the form of lost wages, loss of earning capacity, and past and future mental and emotional distress; as well as punitive damages, attorney fees, court costs, and other equitable relief. If Godfrey recovers compensatory damages through the state court proceeding for his due process and equal protection claims, he will not be able to recover any further compensatory damages in the federal proceeding. Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1022 (8th Cir. 2008) ("[The plaintiff] is only entitled to one compensatory damage award if liability is found on any or all of the theories asserted [on the same injury].").

Absent an argument by the parties that the Iowa Constitution should be construed any differently than the United States Constitution, claims for violations of due process and equal protection under the Iowa Constitution are generally construed similar to claims alleging

7

violations of the Due Process Clause and Equal Protection Clause of the United States Constitution.[4] See City of Des Moines v. Emp't Appeal Bd., 722 N.W.2d 183, 192 (Iowa 2006) ("We have stated that the state and federal due process clauses are interpreted the same."); Sanchez v. State, 692 N.W.2d 812, 817 (Iowa 2005) ("Because neither party in this case has argued that our equal protection analysis under the Iowa Constitution should differ in any way from our analysis under the Federal Constitution, we decline to apply divergent analyses in this case."); Johnson v. Univ. of Iowa, 408 F. Supp. 2d 728, 749-50 (S.D. Iowa 2004) ("As a general rule, the Iowa Supreme Court follows federal equal protection analysis when construing the Iowa Equal Protection Clause." (citations omitted)). The parties have not presented any argument suggesting the due process and equal protections claims under the Iowa Constitution should be interpreted any differently from the due process and equal protection clauses of the United States Constitution, and therefore the disposition of state and federal due process and equal protection claims will likely be determined by applying the same facts to substantially the same legal framework.

---

[4] However, the Iowa Supreme Court reserves the right to develop a different and more stringent framework under the Iowa Constitution or to apply an independent analysis to the federal constitutional framework. See NextEra Energy Res., LLC v. Iowa Utils. Bd., 815 N.W.2d 30, 45 (Iowa 2012) ("First, we jealously reserve the right to develop an independent framework under the Iowa Constitution. Second, when a party does not urge that we adopt a standard under the Iowa Constitution different from that under the Federal Constitution, we generally proceed under the standard proposed by the party. Even in cases where a party has not suggested that our approach under the Iowa Constitution should be different from that under the Federal Constitution, we reserve the right to apply the standard in a fashion at variance with federal cases under the Iowa Constitution." (citations omitted)); see also Varnum v. Brien, 763 N.W.2d 862, 879 n.6 (Iowa 2009) ("Generally, we view the federal and state equal protection clauses as identical in scope, import, and purpose. At the same time, we have jealously guarded our right to "employ a different analytical framework" under the state equal protection clause as well as to independently apply the federally formulated principles" (citations and quotations omitted)); Racing Ass'n of Cent. Iowa v. Fitzgerald, 675 N.W.2d 1, 5 (Iowa 2004) ("[W]hile [the Iowa Supreme Court] will generally apply the same analysis to federal and state equal protection claims, [the Iowa Supreme Court] has not foreclosed the possibility that there may be situations where differences in scope, import, or purpose of the two provisions warrant divergent analyses.").

8

The state and federal actions contain substantially similar claims, were filed by the same plaintiff against the same defendants, concern the same facts and issues, and seek the same relief. The only distinction between the two proceedings is that the state claims are based upon the Iowa Constitution, and the federal claims are based on the United States Constitution; however, the analysis and recovery under both theories is substantially the same. As such, a final judgment on the merits rendered by the state court likely will be binding on the parties in this Court under the principles of res judicata. See Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 84-85 (1984) (finding the full faith and credit statute gives full claim and issue preclusion to state court judgments on § 1983 claims); Hanig v. City of Winner, 527 F.3d 674, 676 (8th Cir. 2008) (barring a § 1983 claim subsequent to a state court mandamus action on the same injury under res judicata); see also Lambert v. Iowa Dep't of Transp., 804 N.W.2d 253, 257 (Iowa 2011) (setting forth the requirements for res judicata under Iowa law). Accordingly, the Court finds the state and federal cases are parallel proceedings for the purpose of Colorado River abstention. See Sisler v. West, 570 F. Supp. 1 (S.D. Iowa 1983), aff'd 718 F.2d 1107 (8th Cir. 1983) (finding state and federal proceedings were similar in applying Colorado River abstention when the state lawsuit sought relief through state law theories of liability, and the federal suit sought relief under the same facts pursuant to § 1983).

**B. Exceptional Circumstances**

As the state and federal actions are parallel, the Court must determine if "exceptional circumstances" warrant abstention under Colorado River. 424 U.S. at 813; see Moses H. Cone Mem'l Hosp. v. Mercury Constr., 460 U.S. 1, 14 (1983). Six non-exhaustive factors must be considered by the Court in determining whether exceptional circumstances warrant abstention. The Court must consider,

> (1) whether there is res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in

9

piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority – not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Mountain Pure, 439 F.3d at 926 (citing United States Fid. & Guar. Co v. Murphy Oil USA, 21 F.3d 259, 263 (8th Cir. 1994)). "These factors are not intended to be exhaustive, nor are they mechanically applied. Rather, they are pragmatically applied to advance the 'clear federal policy' of avoiding piecemeal adjudication." Mountain Pure, 439 F.3d at 926 (citing Moses H. Cone, 460 U.S. at 16, 21). The weight to be given to any particular factor varies from case to case, depending on the individual circumstances of each case. Moses H. Cone, 460 U.S. at 16.

The first factor is inapplicable because there is no res over which this dispute concerns. See Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., 48 F.3d 294, 297 (8th Cir. 1995) ("This declaratory judgment action is an in personam action that does not involve a res. Accordingly, this factor does not weigh into the 'exceptional circumstances' calculation."). The second factor is also of little importance because neither party will be inconvenienced as both this Court and the state court are located in Des Moines, Iowa. See Mountain Pure, 439 F.3d at 926 ("[T]here is no appreciable difference in the level of inconvenience between the two fora. Thus, . . . this factor is not relevant to the existence of exceptional circumstances."); Federated Rural Elec., 48 F.3d at 297 (stating the convenience factor was "irrelevant to the existence of exceptional circumstances" when the two fora were equally convenient).

The Eighth Circuit has noted that the third factor, piecemeal litigation, is a predominant factor in determining whether there are special circumstances warranting abstention under Colorado River. See Federated Rural Elec., 48 F.3d at 297 ("The Supreme Court cases make it clear that this is the predominant factor."); Mountain Pure, 439 F.3d at 926-27 ("[T]he desire to

avoid piecemeal litigation . . . is the predominant factor."). Both the state and federal proceedings assert substantially the same equal protection and due process claims against the same defendants, requiring both courts to consider the same evidence against substantially the same law. Requiring the parties to litigate parallel claims simultaneously in two different courts creates the potential for duplicative litigation, opens the door for inconsistent rulings, and adds unnecessary time and cost to the parties and the courts. Permitting this case to proceed expeditiously in one court avoids these risks. As such, this factor weighs strongly in favor of abstention.

The fourth factor the Court must consider is whether one case has priority. Godfrey originally chose to file his claims against Defendants in state court on January 11, 2012, and later amended his state law claims on August 6, 2012, adding claims for violations of due process and equal protection under the Iowa Constitution. It was not until January 30, 2013, that Godfrey filed his federal claims in this Court. Godfrey's priority was to originally file his claims in state court, and he proceeded to wait approximately one year to file his claims in federal court. See Fru-Con Constr., 574 F.3d at 539-40 (stating the "priority of filing includes the plaintiff's choice of forum"). However, the relative priority of the cases "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21. In the state court proceeding, numerous motions have been filed, a significant amount of discovery has been conducted, and issues in the case have been reviewed by the Iowa Supreme Court on interlocutory appeal. To the contrary, the federal case is far less advanced as only this Motion is before this Court and the parties have not initiated the discovery process. Thus, the priority factor leans in favor of abstention.

The fifth factor considers whether the case is controlled by state or federal law. Although the federal constitutional claims, as well as the state constitutional claim, will be analyzed under

11

the federal constitutional framework, to establish a violation of due process under either the state or federal constitutional claims, Godfrey must show that he has been deprived of a protected life, liberty, or property interest. Mulvenon v. Greenwood, 643 F.3d 653, 657 (8th Cir. 2011). "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); see also Mulvenon, 643 F.3d at 657; Lillehaug v. City of Sioux Falls, 788 F.2d 1349, 1351-52 (8th Cir. 1986). Both the state and federal claims require an interpretation of 2008 Iowa Acts 1191 §§ 13 and 14 to determine whether Godfrey has a protected property interest in his salary as Workers' Compensation Director.[5] This issue is unprecedented, and neither party has provided any authority directly addressing the issue of whether an appointed non-elected person has a protected property interest in their salary within the range determined by the legislature.

Iowa courts have a particularly important interest in the outcome of this action because it requires a determination of an important state law regarding compensation rights of appointed non-elected officials and the powers of the current and future Governors over the performance of these state officials. This determination will have an effect beyond impacting Godfrey as it will concern all Iowa officials whose salary is set and determined in the same manner. With respect

---

[5] 2008 Iowa Acts 1191 § 13 provides,

The governor shall establish a salary for appointed nonelected persons in the executive branch of state government holding a position enumerated in the section of this division of this Act that addresses the salary ranges of state officers within the range provided, by considering, among other items, the experience of the individual in the position, changes in the duties of the position, the incumbent's performance of assigned duties, and subordinates' salaries.

Section 14 provides, in part, "The governor . . . shall determine the salary to be paid to the person indicated at a rate within this salary range from funds appropriated by the general assembly for that purpose."

to state policy issues, Iowa courts are the more appropriate forum to determine this issue.  See Colo. River, 424 U.S. at 814 ("Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."); Yamaha Motor Corp. v. Stroud, 179 F.3d 598, 603 (8th Cir. 1999) ("Comity favors permitting the Arkansas court system to decide issues of state statutory law, and abstention is called for when it is possible that the state court might interpret the underlying law in such a way as to foreclose the need to review at least some of the plaintiff's federal claims.").  Furthermore, allowing the state court to determine this unique issue avoids the potential for inconsistent judgments on an issue that has substantial importance to Iowa.  Accordingly, the Court finds this factor weighs heavily in favor of abstention.

The sixth factor "counts for or against abstention and dismissal only where 'one of the forums is inadequate to protect a party's rights.'"  Fru-Con Constr., 574 F.3d at 539.  Both this Court and the state court are adequately equipped to protect the parties rights concerning the issues presented in this suit, and therefore this factor is neutral in determining whether to abstain.

Despite the strong presumption that federal courts should retain federal jurisdiction, the Court, in light of the particular nature of this case, finds that exceptional circumstances warrant abstention under Colorado River.  In balancing the factors, the Court finds the likelihood of piecemeal litigation and the implication of important issues of state law weigh heavily in favor of abstention.  The Court also finds Godfrey's priority of filing his claims in state court approximately one year before filing the federal action and the substantial progress made in the state proceeding favors abstention.  Accordingly, the Court will abstain from hearing this case in favor

of the state court proceeding under the principles of Colorado River abstention.[6] See Sisler, 570 F. Supp. at 3 (finding abstention appropriate when the plaintiff filed a federal § 1983 action after bringing the same claims against the same defendants under state law in state court and noting that exercising jurisdiction in both cases would result in piecemeal litigation, waste judicial resources, and inconvenience the parties).

The Court, however, finds it is appropriate to stay the federal proceeding, rather than to dismiss the case. As other courts have noted, "a stay, not a dismissal, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the Colorado River doctrine." Selmon v. Portsmouth Drive Condo. Ass'n, 89 F.3d 406, 409-10 (7th Cir. 1996). Staying the federal proceeding assures that this forum is still available to Godfrey in the event that the state proceeding does not prove to be "an adequate vehicle for the complete and prompt resolution of the issues between the parties." Moses H. Cone, 460 U.S. at 28; see Wilton v. Seven Falls Co., 515 U.S. 277, 288 n.2 (1995) ("We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of time bar if the state case, for any reason, fails to resolve the matter in controversy."); see also Royal Indem. Co. v. Apex Oil Co., 511 F.3d 788, 797 (8th Cir. 2008) (noting that it is preferred that courts stay rather than dismiss a case when deferring to a state court proceeding).

---

[6] The Court recognizes that in addition to abstention under Colorado River, the abstention concepts found in R.R. Comm'n v. Pullman Co., 312 U.S. 496 (1942), may be applicable. Pullman abstention permits a district court to abstain from deciding an unclear question of state law that is fairly susceptible to an interpretation by the state court that would avoid any federal constitutional question. See Beavers v. Ark. State Bd. of Dental Exam'rs, 151 F.3d 383 (8th Cir. 1998). However, the parties herein have argued, and the Court finds, the doctrine of Colorado River abstention to be the more appropriate form of abstention under the specific facts of this matter because of the sufficiently similar nature of the state and federal proceedings and the susceptibility to piecemeal litigation.

## III. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss, ECF No. 9, must be **granted in part** and **denied in part**. Defendants' Motion to Dismiss or Stay under Rule 12(b)(1) on principles of abstention must be granted as to the stay and denied in regard to dismissal. Defendants' Motion to Dismiss under Rule 12(b)(6) for failure to state a claim is denied as moot. The proceeding is stayed and deferred to the Iowa District Court for Polk County.

**IT IS SO ORDERED.**

Dated this 27th day of June, 2014.

_____
JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT